Ira James STONE and Johnny Luscious
Phelps, Plaintiffs-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

Nov. 1, 1974.

Certiorari Denied by Supreme Court
March 10, 1975.

**598**

Landon H. Goins and Gary D. Shields, Chattanooga, for Stone.

H. Wayne Grant and Wilkes T. Thrasher, Jr., Chattanooga, for Phelps.

Milton P. Rice, Atty. Gen., R. Jackson Rose, Asst. Atty. Gen., Nashville, Robert J. Batson, Jr., and Stephen M. Bevil, Asst. Dist. Attys. Gen., Chattanooga, for defendant-in-error.

## OPINION

RUSSELL, Judge.

Johnny Luscious Phelps and Ira James Stone, indigent and represented by separate appointed counsel, were jointly tried and each convicted of the rape on July 5, 1973, of a university co-ed in Chattanooga. Phelps' punishment was set at ninety-nine years in the penitentiary, while Stone received ten years. Each has appealed.

The victim was accosted during daylight as she returned to her automobile after attending a physics class. Two black men kidnapped her at pistol point, drove her to the apartment of a third black (Stone), and all three had sexual intercourse with her. Upon her release she sounded the alarm and guided authorities back to the apartment. Stone was there, it being where he lived, and after a brief denial of personal participation, he gave multiple confessions and named Phelps as the initial violator of the girl, confirmed that she was next raped by the second abductor (who at trial time was not yet in custody) and said that he violated her only out of fear of the other two men.

The victim positively identified Phelps as the gunman, and as the one who raped her first and last. Phelps testified that he was not involved, that he was elsewhere.

The evidence overwhelmingly supports the finding of guilt as to both of these defendants. They perpetrated a vicious gang rape of a totally innocent victim chosen from a university campus.

■ The only serious error reflected in this record occurred when Phelps refused to voluntarily leave his jail cell and come to court for the beginning of the second day of the trial. He complained of abdominal pains and swollen feet. The trial judge communicated with the jail physician and was told that although the doctor had not seen Phelps that day that from past contacts he was satisfied that there was nothing physically wrong with him. The judge sent word to Phelps that he must come to court or the trial would proceed without him. Phelps refused to come and the trial was started without him. Phelps came to the courtroom at approximately 10:00 a. m. During the interim, which apparently was only a few minutes, the testimony of witness Clyde M. Elsea was heard. Elsea had been a university patrol sergeant at the time of the crime, and was dispatched to the rape scene and there met with other officers and the victim and confronted and arrested Stone. His testimony did not implicate Phelps, nor was he cross-examined by Phelps' lawyers.

The only other testimony heard during Phelps' absence from the courtroom was half a dozen questions of and answers by William J. Edwards on direct examination, and they did not mention Phelps.

We hold that it was error as to Phelps to conduct any of his trial in his absence. If the trial court was satisfied that Phelps was able to attend he should not have offered him an option, but should have had him brought into court. Apparently Phelps was able to attend, since he subsequently did so and testified at length in his own defense.

■ That a defendant has a constitutional right to be present at all times during his trial is clear. See the annotation on this subject at 25 L.Ed.2d 931, United States Supreme Court Reports. While this right may be waived, Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), we do not find a waiver in the context of this case.

However, it is not necessary to reverse Phelps' conviction and put this rape victim through the trauma of another trial. This error is harmless beyond a reasonable doubt. Huffman v. State, 3 Tenn.Cr.App. 124, 458 S.W.2d 29 (1970); Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). No evidence damaging in any way to Phelps was introduced in his absence. His distinguished lawyers were present and found no need for cross-examination. The total evidence of Phelps' guilt is completely convincing. We hold this error to be harmless.

■ Phelps' assignments of error complaining of the denial of a continuance, the denial of a psychiatric examination, and an alleged systematic exclusion of blacks from the jury are clearly without merit. The motion for a continuance addressed itself to the sound discretion of the trial judge, and this record does not show an abuse of that discretion. Oden v. State, 2 Tenn.Cr.App. 304, 453 S.W.2d 441 (1970). A psychiatric examination was attempted but was not definitive because of the conscious objection and resistance of Phelps. The jury selection system followed was free from a conscious, systematic exclusion of blacks for reasons or race, so far as this record demonstrates.

■ Error is assigned upon the fact that a police officer was "allowed to testify" after reviewing the State's file. This is said to violate "exclusionary and hearsay rules". The officer testified that he was testifying from his own notes, that he had notecards, and that he remembered. The argument is made that because the witness reviewed the State's file it is impossible to tell whether the witness was testifying from his own memory. This was a matter for cross-examination. Nothing in the record shows that the testimony was based upon information that was hearsay to this officer.

■ Error is assigned upon the trial court's refusal to first try the issue of in-

sanity, in a separate proceeding from one determining guilt. Phelps was not entitled to a bifurcated trial. The defense of insanity at the time of the crime is at issue under a plea of not guilty.

■ Reversal is sought because of testimony from co-defendant Stone tending to accuse Phelps of another rape. This testimony was elicited by Stone's attorney on the issue of claimed fear of Phelps by Stone, and was objected to by both Phelps and the State. The objection was sustained. The assignment is overruled.

■ Phelps assigns error upon the introduction into evidence of Stone's confessions, because they "contained conclusions and not fact". The confessions were not introduced until Stone had testified, and Phelps' counsel made no objection. The assignment is without merit.

■ Error is assigned upon the exclusion of a letter relative to Phelps' mental health from a Dr. Geller to Judge Frank Wilson, a federal district judge; a letter written in 1966 upon the same subject from a Dr. Sigman to the learned trial judge who conducted this trial; and a commutation of a prior sentence by the late Governor Buford Ellington, with reasons stated therein. It is said that these writings were admissible as official court records or an entries in business records. The assignment is without merit. All questions of hearsay and expert opinion aside, the opinions reflected in those writings are not directly relevant timewise, having been written many years before Phelps raped this girl. As the trial judge pointed out, Phelps had not ever been adjudicated to be legally insane. It is also noteworthy that no evidence of insanity was introduced; but, on the contrary, Phelps testified at great length and with apparent perception, relying altogether upon an alibi. If a defense of lack of capacity had existed, certainly the fine lawyers representing Phelps would have presented that defense in competent form.

■ The contention that it was error to charge the jury upon the defense of insanity is without merit, as no prejudice resulted. The trial judge was probably responding to defense implications of insanity, which surfaced periodically. For example, defense counsel would not enter a plea for Phelps, implicitly for lack of capacity.

■ It was not error to charge aiding and abetting, as Phelps was that way involved in the rapes by the second abductor and Stone. The contention that our statutes dealing with parole eligibility, etc., ordered charged by T.C.A. § 40-2707 in all felony cases, are unconstitutionally vague is without merit.

■ Finally, it is the plaint of Phelps that his refusal to sign a constitutional rights waiver form was introduced into evidence. No contemporaneous objection was made, so the assignment is meritless. Crawford v. State, 4 Tenn.Cr.App. 142, 469 S.W.2d 524 (1971).

The conviction of Phelps is affirmed.

Stone's defense was that he was forced by Phelps and the other abductor to carnally know the victim. When first arrested he denied "touching" the girl. He subsequently confessed to violating her after he decided that he wanted to. He apparently had many opportunities to leave the scene and his claim that he raped the girl under duress was logically rejected by the jury.

■ Stone's assignments of error going to the legal sufficiency of the convicting evidence and the trial court's refusal to direct a verdict of acquittal are overruled, as is his assignment based upon the trial court's refusal to grant him a severance. No prejudice to Stone resulted from the joint trial. Phelps never confessed, and did not inculpate Stone by his testimo-

ny. The argument that Stone was prejudiced by Phelps' refusal to come to trial for a few minutes on the second day is without merit.

■ Finally, Stone relies for reversal upon the trial court's refusal to give a tendered special instruction on duress as a defense. The tendered instruction included the proviso that it applied only where there was no reasonable opportunity to escape the compulsion without doing what was done. Assuming the correctness of this tendered charge, it obviously was not applicable to the facts of this case. Under Stone's own testimony he had an almost continuous opportunity to escape, had that been his desire. While it is fair to say that the other two rapists wanted him to participate, and that he was ambivalent about personally participating, it cannot be said that this evidence would anywhere support the theory that Stone had no reasonable opportunity to escape the compulsion without raping the girl. He was actually sent out of the room by Phelps when the first rape occurred, and apparently was in and out of the room several times. We hold that the evidence does not support and hence require the special jury instructions tendered; and as a matter of undisputed fact Stone had a reasonable opportunity to avoid committing the rape without undue exposure to death or serious bodily harm, so the defense of duress was unavailable. Wharton's Criminal Law and Procedure, Vol. 1, § 123, p. 261–7.

We also affirm the conviction of Stone.

WALKER, P. J., concurs.

O'BRIEN, Judge (concurring).

I concur in the result reached by Judge Russell in this case affirming the judgment as to both defendants. I cannot agree with the statement that the defendant, Phelps, did not waive his right to be present at all times during his trial. It is plain to me

that under the ruling in Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353, that defendant did waive his privilege of personally confronting the witnesses by consent, or by his own misconduct. He willfully absented himself from the courtroom and I am of the opinion that the trial judge was under no compulsion to force him to attend the proceedings under the circumstances set forth in this record. The defendant in *Allen*, supra, was removed from the courtroom and the trial proceedings held in his absence. No such circumstance exists in this case. In discussing that problem the Allen court had this to say:

"... But our courts palladiums of liberty as they are, cannot be treated disrespectfully with impunity. Nor can the accused be permitted by his disruptive conduct indefinitely to avoid being tried on the charges brought against him. It would degrade our country and our judicial system to permit our courts to be bullied, insulted, and humiliated and their orderly progress thwarted and obstructed by defendants brought before them charged with crimes." ...

There was no act of the trial judge in this case which prevented the defendant from being present during the entire course of this trial. As stated by Justice Brennan in his concurring opinion in *Allen*, supra, quoting from Diaz v. United States, 223 U.S. 442, 457–458, 32 S.Ct. 250, 254–255, 56 L.Ed. 500, citing Falk v. United States, 15 App.D.C. 446 (1899):

"It does not seem to us to be consonant with the dictates of common sense that an accused person * * * should be at liberty, whenever he pleased, * * * to break up a trial already commenced. The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased to permit it * * * This would be a travesty of justice which could not be

tolerated * * * [W]e do not think that any rule of law or constitutional principle leads us to any conclusion that would be so disastrous as well to the administration of justice as to the true interests of civil liberty.

* * * * * *

The question is one of broad public policy, whether an accused person, placed upon trial for crime and protected by all the safeguards with which the humanity of our present criminal law sedulously surrounds him, can with impunity defy the processes of that law, paralyze the proceedings of courts and juries and turn them into a solemn farce, and ultimately compel society, for its own safety, to restrict the operation of the principle of personal liberty. Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong."