IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 6, 2005

## STATE OF TENNESSEE v. JASPER L. VICK

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-09113     Arthur T. Bennett, Judge**

---

**No. W2005-00467-CCA-R3-CD  - Filed March 22, 2006**

---

Following a jury trial, Defendant was convicted of one count of especially aggravated kidnapping, a Class A felony, two counts of aggravated kidnapping, a Class B felony, and one count of sexual battery, a Class E felony.  The trial court merged Defendant's two convictions for aggravated kidnapping into his conviction for especially aggravating kidnapping.  The trial court sentenced Defendant as a Range II, multiple offender, to thirty-six years for his especially aggravated kidnapping conviction and four years for his sexual battery conviction.  The trial court ordered the sentences to be served consecutively, for an effective sentence of forty years. Defendant does not challenge the imposition of consecutive sentencing.  In his appeal, Defendant argues (1) that the evidence is insufficient to support his convictions; (2) that the trial court erred in denying Defendant's motion for a continuance; (3) that the trial court erred in classifying Defendant as a Range II multiple offender; and (4) that the trial erred in its application of enhancement factors.  After a thorough review, we affirm Defendant's convictions of especially aggravated kidnapping and sexual battery.  However, we remand the case to the trial court for resentencing in accordance with this opinion.

   **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed as to Convictions; as to Sentencing, Judgments are Reversed and Remanded for Resentencing**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Robert L. Parris, Memphis, Tennessee, for the appellant, Jasper L. Vick.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; Lee Coffee, Assistant District Attorney General; and Christopher Scruggs, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Background

Earline Holt testified that Defendant began living with her in her apartment in December 1999. At the time of the offenses, Ms. Holt was seven and one-half months pregnant with Defendant's child. Ms. Holt said that Defendant took her to work on February 14, 2001, between 5:15 a.m. and 5:30 a.m., in Ms. Holt's red, 1989 Oldsmobile Cutlass. Ms. Holt's mother arrived at her place of employment around 8:15 a.m., and told Ms. Holt that she needed to go home. When Ms. Holt arrived, the police were at her apartment.

Ms. Holt identified the comforter that was on the bed of her daughter, the victim in this case. Ms. Holt said that she never used the comforter after Defendant began living with her. Ms. Holt said that she and Defendant had sexual intercourse about a week before the offenses, but not on her daughter's bed.

On cross-examination, Ms. Holt said she had a "nice relationship" with Defendant. She acknowledged, however, that she called the police in July 2000, when Defendant got upset and struck his daughter who was visiting them. Ms. Holt said that Defendant never took the victim to school, because the school was located across the street from their apartment. Ms. Holt said that sometimes her brother and his girlfriend spent the night in the victim's bedroom. She denied that her sister and her boyfriend had sexual intercourse in the victim's bedroom.

Ms. Holt acknowledged that her daughter did not suffer any physical injuries during the incident, and Ms. Holt did not take her daughter to Child Advocacy until the day after the offenses.

The victim testified that she was fourteen years old at the time of the offenses. She said that Defendant took her mother to work on February 14, 2001, while she was still asleep. When Defendant returned, he came into her bedroom and showed her a "crack pipe" fashioned like a sex toy. The victim said that she told Defendant to leave her alone, and he told her it was time to get up for school. The victim got up and went into the bathroom. Defendant was still sitting on her bed when she returned. The victim said that Defendant did not have a shirt on, but that was not unusual. Defendant told the victim to turn off the light and close the bedroom door. She refused. Defendant stood up, and the victim saw that he was naked. The victim asked him what he was doing, and Defendant told her that he was going to "have sex" with her because her mother would not. The victim kept telling Defendant, "no."

The victim could not remember how her clothes were removed. The victim refused Defendant's advances, and Defendant started choking her. Defendant then rubbed his "private on [her] private." Defendant continued touching her for about ten to fifteen minutes, and then he told the victim to go take a shower. The victim said she showered and got dressed. Defendant would not let her answer the telephone which had been ringing on and off that morning. The victim said it was her cousin, Shameka Fifer, calling because the young women always walked to school together.

The victim said she and Defendant left the house. Defendant was carrying a kitchen knife with a black handle and told the victim not to "act stupid." The victim interpreted this to mean that she was not to run or scream. The victim said she was afraid that Defendant was driving her somewhere to kill her. Defendant and the victim left the apartment complex in Ms. Holt's car. Defendant placed the knife in the cup holder in the front seat armrest while he drove on the interstate. The victim said she kept talking, trying to calm Defendant down because he was acting "agitated, real easy to get mad."

After awhile, Defendant turned the car around and drove the victim to Shameka Fifer's second floor apartment. Defendant stood at the bottom of the staircase, and watched as the victim ran up to her cousin's apartment. The victim said Ms. Fifer was waiting for her at the top of the stairs, and the two young women went inside the apartment. The victim was crying. Shameka Fifer's mother, Stephanie Fifer, asked the victim what was wrong, and the victim said she could not tell her. Stephanie Fifer asked the victim if Defendant had done something to her, and the victim nodded. Stephanie Fifer called the victim's grandmother. The victim identified the comforter which was introduced as an exhibit at trial as the comforter which was on her bed when Defendant accosted her.

On cross-examination, the victim acknowledged that she did not have any bruising on her neck after Defendant choked her. She said that Defendant never touched her with the knife's blade, but he kept the knife pointed in her direction. The victim agreed that the comforter was on her bed when her uncle and his girlfriend spent the night.

Shameka Fifer testified that the victim usually called her in the morning when she was ready to leave for school. Ms. Fifer said that when the victim did not call her on February 14, 2001, Ms. Fifer started calling the victim's apartment. Ms. Fifer said she was just starting to go over to the victim's apartment when Defendant and the victim arrived. Ms. Fifer said that Defendant waited at the bottom of the stairs until the victim reached the top landing.

Michael Redd testified that he was the groundskeeper for the victim's apartment building and lived on the premises. Mr. Redd said that he was friendly with Defendant. He saw Defendant leave the apartment complex at approximately 8:00 a.m. in Ms. Holt's Oldsmobile on February 14, 2001, but Defendant did not speak to him. Defendant drove toward Interstate 240.

Rachel Copeland, a forensic nurse examiner with the Memphis Sexual Assault Resource Center, testified that she attempted to take a blood sample from Defendant for DNA sampling. Defendant told her she would need a court order. A court order was obtained, and Defendant again refused to cooperate. The trial court conducted a hearing and again ordered Defendant to give a blood sample. When he continued to resist, Defendant was sedated and a blood sample drawn.

Officer Carl Martin with the Memphis Police Department interviewed the victim on February 14, 2001. Officer Martin said the victim had been crying and was sometimes unresponsive to his questioning. The victim told him, however, that Defendant accosted her when she got up to get

ready for school. The victim told Officer Martin that Defendant rubbed his penis on her vagina. Defendant made the victim take a shower and then get into the car. Officer Martin said the victim told him that Defendant drove around for awhile, and then returned to the apartment complex.

Special Agent Donna Nelson, a forensic scientist with the TBI, cut seven swatches of material from the victim's comforter. The first four swatches showed the presence of semen from two unidentified individuals. The semen sample from the last three swatches matched Defendant's DNA. On cross-examination, Agent Nelson testified that it was impossible to date the semen stains.

Defendant called Alice Faye Robinson as a witness. Ms. Robinson said that she lived in Cotton Plank, Arkansas, which was about sixty miles from Memphis. Ms. Robinson had known Defendant for about twenty-five years. Ms. Robinson testified that Defendant spent the night with her on February 13, 2001. The following morning, Ms. Robinson said that she, Defendant, and Ms. Robinson's granddaughter shopped for most of the day. Defendant gave Ms. Robinson a wrist watch for Valentine's Day.

Defendant testified that he was in Cotton Plank, Arkansas on February 13 and February 14, 2001. He said that he and Ms. Holt had an argument about Ms. Holt's cocaine use on the morning of February 13, and he drove to Arkansas around 4:00 p.m. to avoid further arguing. Defendant said that Ms. Holt had "a habit of calling the police" when she was angry. Defendant said that Ms. Holt called the police in July 2000 when he got angry because the victim had kept his daughter out past the time Defendant's daughter was supposed to go back to her mother's house. Defendant said that he was charged with public intoxication and disorderly conduct on that occasion.

Defendant said that he was not surprised that some of the semen stains on the victim's comforter matched his DNA because he and Ms. Holt had previously had sexual intercourse on the comforter.

On cross-examination, Defendant said that Ms. Holt knew where he was going when he left Memphis on February 13, 2001. Defendant said that he paid the note on the Oldsmobile while he lived with Ms. Holt and considered the car as a joint asset. Defendant acknowledged that he was arrested on the current charges in Arkansas on January 26, 2002, after a routine traffic stop. He said he was not driving the Oldsmobile at that time because the car had been impounded by then.

The State recalled Ms. Holt as a rebuttal witness. Ms. Holt testified that she had bought the Oldsmobile Cutlass about a year before she met Defendant, and that the car was hers alone. Ms. Holt said that she never made arrangements for Defendant to keep the car in Arkansas.

## II. Motion for a Continuance

On the morning of trial, defense counsel moved for a continuance to allow time for Defendant to be mentally evaluated. Defense counsel acknowledged that he had not observed any cognitive problems or any signs of psychotic behavior. He became concerned, however, when

Defendant continued to resist providing a DNA sample and seemed unable to comprehend certain aspects of the trial process.

Debra Nichols, a social worker with the Mid-Town Mental Health Clinic, testified at the hearing on Defendant's motion for a continuance. She said that she attempted to interview Defendant twice prior to the hearing, but Defendant refused to answer any questions other than biographical information. Ms. Nichols said that she was unable from her brief observations to make a finding as to Defendant's mental state.

On cross-examination, Ms. Nichols said that Defendant responded appropriately to questions about his birth. She said that Defendant purposefully declined to answer any further questions because he did not believe the questions were relevant to his case.

The trial court found that Defendant was capable of understanding the proceedings and competent to stand trial. Accordingly, the trial court denied Defendant's motion for a continuance.

The decision to grant a motion for a continuance is left to the trial court's discretion, and a denial of the requested continuance will not be overturned on appeal absent a clear showing of an abuse of that discretion. *State v. Russell*, 10 S.W.3d 270, 275 (Tenn. Crim. App. 1999) (citing *State v. Melson*, 638 S.W.2d 342, 359 (Tenn. 1982); *Baxter v. State*, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973)). Requiring an accused to plead to an offense or stand trial while insane or mentally incompetent violates the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S. Ct. 836, 837, 15 L. Ed. 2d 815 (1966); *State v. Blackstock*, 19 S.W.3d 200, 205 (Tenn. 2000). When there is a question about a defendant's competency to stand trial, the trial court, on its own motion or upon the request of the district attorney general or defense counsel, may order the defendant's mental evaluation after a hearing. Tenn. Code Ann. § 33-7-301(a)(1); *Berndt v. State*, 733 S.W.2d 119, 122 (Tenn. Crim. App. 1987). A defendant is competent to stand trial if he or she has "the capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense." *Mackey v. State*, 537 S.W.2d 704, 707 (Tenn. Crim. App. 1975). In determining whether a trial court should have *sua sponte* ordered a competency hearing, "an appellate court may only consider those facts which were before the court when the trial commenced or the pleas were entered." *Berndt*, 733 S.W.2d at 122. The standard of review is "'whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to [a defendant's] competency to stand trial'" or enter a plea of guilty. *Id.* (quoting *Williams v. Bordenkircher*, 696 F.2d 464, 467 (6th Cir. 1983)). The burden is on the defendant to prove his incompetency by a preponderance of the evidence, and the trial court's findings are conclusive on appeal unless the evidence preponderates otherwise. *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

The trial court found that although Defendant had shown a persistent lack of cooperation throughout his case, Defendant had not engaged in any course of activity the trial court had not observed before, and noted that Defendant was not the only person to refuse to give a DNA sample

when requested to do so. The trial court found that Defendant's prior counsel had given no indication that Defendant was incompetent to stand trial. In determining whether a competency hearing is required, the trial court may consider the defendant's behavior and demeanor at trial as well as any prior medical opinion on competency. *Drape v. Missouri*, 420 U.S. 162, 180, 95 S. Ct. 896, 908, 43 L. Ed. 2d 103 (1975). Ms. Nichols attempted to interview Defendant twice concerning his mental competency prior to trial, but Defendant refused to answer her questions on either occasion and told her he did not think the questions were relevant to his case. *See Stone v. State*, 521 S.W.2d 597, 599 (Tenn. Crim. App. 1974) (A trial court's denial of the defendant's request for further mental evaluation was not error when the defendant had refused to cooperate with the first evaluation).

The trial court was in the best position to observe Defendant's demeanor and behavior during his trial. Based on these observations, the trial court concluded that Defendant was capable of understanding the proceedings. We find no abuse of discretion in the trial court's denial of Defendant's motion for a continuance. Defendant is not entitled to relief on this issue.

### III. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support his convictions of especially aggravated kidnapping and sexual battery. Specifically, Defendant contends that his alibi testimony coupled with the inconsistencies in the testimony of the State's witnesses undermines the sufficiency of the convicting evidence.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

As relevant here, the offense of sexual battery is defined as "unlawful sexual contact with a victim by the defendant" accompanied by force or coercion, or without the consent of the victim, and the defendant knows or has reason to know that the victim did not consent to the unlawful contact. Tenn. Code Ann. § 39-13-505(a)(1) and (2). "'Sexual contact' includes the intentional

touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id*. § 39-13-501(6).

Viewing the evidence in a light most favorable to the State, the victim testified that Defendant accosted her in her bedroom and told her he was going to have sex with her because her mother refused to do so, that the victim repeatedly told Defendant "no," that Defendant choked the victim with one hand when she continued to resist, and that Defendant rubbed his penis on the victim's vagina. Based on the foregoing, we conclude that the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Defendant was guilty of sexual battery.

The offense of especially aggravated kidnapping, as relevant here, is defined as the false imprisonment of another "accomplished with a deadly weapon." *Id*. § 39-13-305(a)(1). "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." *Id*. § 39-13-302(a). The victim testified that after she took a shower and got dressed, Defendant made the victim stay close to him so that she would not answer the ringing telephone. She and Defendant then left the house and got into Ms. Holt's car. Defendant kept a knife pointed at the victim as they walked to the car and told her not to "act stupid." Defendant placed the knife in the cup holder of the car's armrest as he drove on the interstate. We conclude that the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Defendant was guilty of especially aggravated kidnapping.

Like any other fact at trial, an alibi defense presents an issue of fact to be weighed and determined by the jury. *Cole v. State*, 187 Tenn. 459, 215 S.W.2d 824, 825 (1948); *Smith v. State*, 566 S.W.2d 553, 556 (Tenn. Crim. App. 1978). Likewise, the credibility of eyewitness testimony identifying the defendant as the person who committed the crime is a question of fact for the jury. *See State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made. *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App.1999) (citing *Strickland,* 885 S.W.2d at 87-88).

The jury heard the testimony of the victim, Ms. Holt, Shameka Fifer, and Mr. Redd who all stated that Defendant was at the victim's apartment complex on the morning of February 14, 2001. The jury also heard Defendant's and Ms. Robinson's testimony that Defendant was in Cotton Plank, Arkansas on the day of the offenses. The jury was not obligated to accept Defendant's alibi defense over the positive identification by the victim of Defendant as the perpetrator of the offenses, the corroborating testimony of the other witnesses as to Defendant's presence at the apartment complex shortly after the offenses occurred, and the forensic evidence showing Defendant's semen on the victim's comforter. Defendant is not entitled to relief on this issue.

## IV. Sentencing Issues

Defendant argues that the State failed to establish beyond a reasonable doubt that he had the

requisite prior felony convictions to support a Range II, multiple offender classification. Specifically, Defendant contends that the State failed to prove that he had been convicted of aggravated assault in Tennessee in 1990, or that his 1973 South Carolina conviction for the offense of "assault and battery of a high and aggravated nature" was the equivalent of a Class C felony in Tennessee. Defendant also argues that the trial court erred in its application of enhancement factors.

When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). Because the record reflects that the trial court failed to follow the analysis required by Tennessee Code Annotated section 40-35-106(b)(5) in determining Defendant's range classification, erred in its application of some of the enhancement factors, and failed to make the requisite findings to support a finding that Defendant is a dangerous offender, our review is *de novo* without a presumption of correctness. Tenn. Code Ann. § 40-35-401(d).

The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. *Id.* § 40-35-401, Sentencing Commission Comments. In conducting a *de novo* review of a sentence, we must consider: (1) the evidence, if any, received at the trial and sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. *Id.* §§ 40-35-102, -103, and -210; *State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

A. Sentencing Hearing

The State based its request for an enhanced range of punishment on Defendant's prior conviction of aggravated assault in Tennessee in 1990, and his 1973 South Carolina conviction of the offense of assault and battery of a high and aggravated nature. For the 1990 Tennessee assault conviction, the State acknowledged that the presentence report did not show a disposition of this charge. The State, however, informed the trial court that it had verified with the Shelby County criminal court clerk that Defendant had entered a plea of guilty to the offense of aggravated assault in indictment number 90-11602, and received a sentence of three years. The State also introduced a Shelby County probation investigation report prepared by Shelby County dated May 16, 2002, reflecting that Defendant was convicted of aggravated assault in 1990 and was sentenced to three years. Defense counsel contended at the sentencing hearing that Defendant did not remember "getting three years" for this offense, but offered no corroborating evidence.

For the South Carolina conviction, the State introduced non-certified copies of Defendant's indictment in the Hampton County, South Carolina General Sessions Court in 1973 for the offense of assault and battery with intent to kill, and a judgment form showing that Defendant entered a plea

of guilty to the lesser included offense of assault and battery of a high and aggravated nature, for which he received a sentence of eight years. Because the offense of assault and battery of a high and aggravated nature is a common law offense in South Carolina, the State also introduced a copy of the annotations from South Carolina Code Annotated section 16-3-620 (2003) which lists several cases setting forth the elements of the offense. *See, e.g., State v. Hill*, 175 S.E.2d 227, 230 (S.C. 1970). The State primarily based its argument that the South Carolina assault and battery conviction was the equivalent of a Class C felony in Tennessee on the length of Defendant's sentence for this offense. Based on Defendant's 1990 Tennessee aggravated assault conviction and his 1973 South Carolina conviction of assault and battery of a high and aggravated nature, the trial court declared Defendant to be a Range II, multiple offender, for sentencing purposes. *See* Tenn. Code Ann. § 40-35-106(a)(1).

At the sentencing hearing, the State introduced Defendant's presentence report into evidence. In addition to the convictions relied upon to support Defendant's range classification, the presentence report showed that Defendant has numerous misdemeanor convictions in Tennessee including disorderly conduct, disturbing the peace, a weapons offense, driving under the influence, simple assault, shoplifting, and malicious mischief. Defendant was also convicted of grand larceny in Oklahoma in 1979 and was sentenced to one hundred eighty days. Based on these misdemeanor convictions, the trial court applied enhancement factor (2), Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. *See id*. § 40-35-114(2).

In addition, the trial court found that enhancement factor (5), the victim was particularly vulnerable because of age or physical or mental disability, was appropriate based on the victim's age as well as her small stature. *See id*. § 40-35-114(5). Because Defendant was the victim's mother's live-in boyfriend, the trial court found that Defendant violated a position of private trust. *See id*. § 40-35-114(16).

The trial court considered Defendant's release of the victim as a mitigating factor, but found that the enhancement factors outweighed the mitigating circumstance. *See id*. § 39-13-305(b)(2). The trial court sentenced Defendant to thirty-six years for his especially aggravated kidnapping conviction and four years for his sexual battery conviction. The trial court ordered the sentences to be served consecutively based on its finding that Defendant has an extensive record of criminal activity and was a dangerous offender. *See id*. § 40-35-115(b)(2) and (4).

## B. Classification as a Range II offender

The trial court may sentence a defendant as a Range II offender when it finds beyond a reasonable doubt that the defendant is a multiple offender. A multiple offender is a defendant who has received "[a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes." Tenn. Code Ann. § 40-35-106(a)(1). "Prior convictions include convictions under the laws of any other state . . . which, if committed in this state, would have constituted an offense cognizable by the laws of this

state. In the event that a felony from a jurisdiction other than Tennessee is not a named felony in this state, *the elements of the offense shall be used* by the Tennessee court to determine what classification the offense is given." *Id*. § 40-35-106(b)(5) (emphasis added). The appropriate analysis of prior out-of-state convictions is under Tennessee law as it existed at the time of the out-of-state conviction. *State v. Brooks*, 968 S.W.2d 312, 313-14 (Tenn. Crim. App. 1997).

The trial court must find that a defendant is a multiple offender beyond a reasonable doubt before ordering a sentence within Range II. Tenn. Code Ann. § 40-35-106(c). Defendant's 1990 aggravated assault conviction in Tennessee is a Class C felony and may be used to support range enhancement for both of his convictions. *See id*. § 39-13-102(b) (1990). In order to be classified as a multiple offender for his especially aggravated kidnapping conviction, Defendant's 1973 South Carolina conviction must rise to the level of at least a Class C felony. For his sexual battery conviction, the 1973 South Carolina conviction must rise to the level of at least a Class E felony.

The State has the burden of proving beyond a reasonable doubt the requisite number of prior felonies to establish a defendant's sentencing range. *See State v. Charles Eberhardt*, No. 03C01-9307-CR-00230, 1994 WL 46511, *2 (Tenn. Crim. App., Knoxville, Feb. 17, 1994), *no perm. to appeal filed*. The State must file a written notice of intent to seek an enhanced range of punishment ten days before trial setting forth the nature of the prior convictions, the dates of the convictions, and the identity of the courts in which the convictions occurred. Tenn. Code Ann. § 40-35-202(a). For range enhancement purposes, a "certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named therein is the same as the defendant before the court, and is prima facie evidence of the facts set out therein." *Id*.

The rules of evidence apply to sentencing hearings, but an exception is made for reliable hearsay. Tenn. Code Ann. § 40-35-210(b)(2); *State v. Taylor*, 744 S.W.2d 919, 921 (Tenn. Crim. App. 1997). However, before "reliable hearsay" may be introduced by the State, the defendant must be afforded a fair opportunity to rebut the proffered evidence, and the evidence must have the indicia of reliability. *Taylor*, 744 S.W.2d at 921. At the sentencing hearing, Defendant challenged his 1990 and 1973 prior convictions, but he did not offer any proof to rebut the convictions. Although clearly hearsay, the trial court found that the Shelby County probation investigation report and the documents from the Hampton County General Sessions Court had the indicia of reliability. Based on our review, we conclude that the State offered sufficient proof to establish Defendant's prior convictions of aggravated assault in Tennessee and of aggravated assault of a high and aggravated nature in South Carolina.

Merely establishing the existence of Defendant's prior South Carolina conviction, however, is not sufficient to satisfy the State's burden of proof under Tennessee Code Annotated section 40-35-106(b)(5). The South Carolina offense of assault and battery of a high and aggravated nature is not a named felony in Tennessee. Thus, in order to use this conviction to elevate Defendant's range classification, the trial court was required to analyze the elements of the out-of-state offense in order to determine whether the offense of assault and battery of a high and aggravated nature was

-10-

analogous to a felony offense under Tennessee's law as it existed at the time the offense was committed. *See id*. § 40-35-106(b)(5); *Brooks*, 968 S.W.2d at 313-14.

The trial court did not, however, compare the elements of the South Carolina offense to a comparable offense in Tennessee, but concluded that the South Carolina offense would have been a Class C felony in Tennessee based apparently on the offense's name and the length of Defendant's sentence for that offense.

The length of sentence a defendant receives for an out-of-state conviction, however, is not determinative of what grade of felony the out-of-state offense might be assigned under Tennessee laws, and, as in the case *sub judice*, may even be misleading. The common law offense of assault and battery of a high and aggravated nature is a misdemeanor in South Carolina. *Hill*, 175 S.E.2d at 231-32. Although sentences for misdemeanor convictions in Tennessee may not exceed eleven months, twenty-nine days, the South Carolina misdemeanor assault and battery offense is punishable by up to ten years in prison. *See State v. Fennell*, 531 S.E.2d 512, 516 (S.C. 2000).

Nor is the name of the South Carolina offense particularly helpful. The offense of assault and battery of a high and aggravated nature is defined by South Carolina courts as "'an unlawful act of violent injury to the person of another, accompanied by circumstances of aggravation, such as the use of a deadly weapon, the infliction of serious bodily injury, the intent to commit a felony, the great disparity between the ages and physical conditions of the parties, a difference in the sexes, indecent liberties or familiarities with a female, the purposeful infliction of shame and disgrace, resistance of lawful authority, and others.'" *Hill*, 175 S.E.2d at 230 (quoting *State v. Johnson*, 198 S.E.2d 1, 2 (S.C. 1938)). Thus, the offense may be committed in any number of ways, some of which would constitute less than a Class C felony if committed in Tennessee. *See, e.g.,* Tenn. Code Ann. § 39-3104 (repealed 1989) (Resisting officer serving process is a misdemeanor offense); *Pope v. State*, 528 S.W.2d 54, 56 (Tenn. Crim. App. 1975) (Common law offense of interfering with an officer while performing his duties is a misdemeanor).

The record does not indicate the particular aggravating circumstance which supported Defendant's South Carolina conviction for assault and battery of a high and aggravated nature. Without such factual findings by the trial court, it is impossible to know whether Defendant's criminal conduct in South Carolina would have constituted a felony in Tennessee, or, if so, whether the offense was of a sufficient grade to elevate Defendant's range classification. *See, e.g., Reese v. State*, 457 S.W.2d 877, 880-81 (Tenn. Crim. App.1970) (noting distinctions between felonious assault with intent to kill and misdemeanor assault and battery).

At the time of Defendant's conviction in 1990, the offense of aggravated assault in Tennessee was a Class C felony and may be considered in determining Defendant's range classification. *See* Tenn. Code Ann. § 39-13-102(b) (1990). Based on the foregoing with regard to the South Carolina conviction, however, we reverse the judgments insofar as they impose Range II sentencing, and remand for a new sentencing hearing. Before imposing a Range II sentence based in part upon Defendant's South Carolina conviction, the trial court must determine the specific elements of the

crime for which Defendant was *convicted* in South Carolina, and from that determine correctly that the classification is no less serious than a Class C felony in Tennessee. The determinative factor is the elements of the conviction offense, not the facts or the elements of the originally charged offense.

## C. Enhancement Factors

Relying on *Blakely v. Washington*, 542 U.S. 246, 124 S. Ct. 2531 (2004), Defendant argues that the trial court erred in applying enhancement factors (2), (5), and (16) because Defendant neither admitted nor did the jury find the presence of these enhancement factors. In *State v. Gomez*, 163 S.W.3d 632, 651 n.16 (Tenn. 2005), the Tennessee Supreme Court concluded that *Blakely* does not apply to Tennessee's sentencing scheme because "the Tennessee Criminal Sentencing Reform Act does not authorize a sentencing procedure which violates the Sixth Amendment right to jury trial."

Alternatively, Defendant argues that the victim was not particularly vulnerable simply because she was fourteen-years-old at the time of the offense. *See* Tenn. Code Ann. § 40-35-114(5). Defendant also contends that there was no evidence that Defendant "gained any advantage over the victim because he happened to be the boyfriend of the victim's mother." *See id*. § 40-35-114(16).

Although Defendant does not challenge the application of enhancement factor (2), we conclude that the record supports application of this enhancement factor based on Defendant's prior criminal record in addition to the two convictions used by the trial court for range classification purposes. *See id*. § 40-35-114(2).

With respect to enhancement factor (5), the State bears the burden of establishing that a victim is particularly vulnerable due to age or physical or mental disability. *State v. Walton*, 958 S.W.2d 724, 729 (Tenn. 1997). A victim's "age alone may have little or no bearing on size, strength or vitality. Thus, unless the State produces evidence of physical or mental limitations at the time of the offense, along with proof of the victim's age, it cannot be presumed that the victim was particularly vulnerable based solely on [his or] her age." *State v. Poole*, 945 S.W.2d 93, 98 (Tenn. 1997); *see State v. Hunter*, 926 S.W.2d 744, 748 (Tenn. Crim. App. 1995) (Fourteen-year-old rape victim's age alone not sufficient to support application of enhancement factor (5)).

In determining whether the State carried its burden of establishing enhancement factor (5), the trial court was required to consider "(1) whether the victim because of age or mental physical attributes, was particularly unable to resist the crime, summon help, or testify at a later date; (2) whether [the] victim's age (extremely old or extremely young) is entitled to additional weight; and (3) whether the vulnerability of the victim made the victim more of a target for the offense, or, conversely, whether the offense was committed in such a manner as to render the vulnerability of the victim irrelevant." *Walton*, 958 S.W.2d at 729 (citing *Poole*, 945 S.W.2d at 96-97).

A victim's small size in comparison to the defendant's stature may render him or her particularly unable to resist the crime. *See State v. William Ray Rhodes*, No. 02C01-9406-CC-00124, 1995 WL 425046, *6 (Tenn. Crim. App., at Jackson, July 19, 1995), *perm. app. denied* (Tenn.

Nov. 27, 1995).  In the instant case, other than an observation by the trial court at the sentencing hearing that the jury would have observed that the victim was "very small," the record does not contain any evidence concerning either the defendant's size or the victim's size at the time of the offense.  *See State v. Edward Talmadge McConnell*, No. E1998-00288-CCA-R3-CD, 2000 WL 688588, *15 (Tenn. Crim. App., at Knoxville, May 30, 2000), *perm. app. denied* (Jan. 28, 2001) (Although victim testified that she weighed between one hundred and one hundred and ten pounds at the time of the offense, there was no evidence pertaining to the defendant's size in comparison to the victim's).  Based on the foregoing, we conclude that the trial court erred in applying enhancement factor (5).

We conclude, however, that the trial court properly applied enhancement factor (16) based on Defendant's abuse of a position of private trust.  Defendant was the live-in boyfriend of the victim's mother.  Defendant told the victim he was going to have sex with her because her mother, who was more than seven months pregnant, refused to do so.  Our courts have previously found on numerous occasions that the sexual abuse of a child residing in the home of the perpetrator is an abuse of private trust.  *State v. Gutierrez*, 5 S.W.3d 641, 645 (Tenn. 1999); *State v. Carico*, 968 S.W.2d 280, 286 (Tenn. 1998); *State v. Adams*, 864 S.W.2d 31, 34 (Tenn. 1993).

Although not raised by Defendant as an issue on appeal, we note that the trial court failed to make the requisite findings established in *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995) to support its finding that Defendant was a dangerous offender in regard to the imposition of consecutive sentencing.  *See* Tenn. Code Ann. § 40-35-115(b)(4).  When a defendant is convicted of multiple crimes, the trial court, in its discretion, may order the sentences to run consecutively if it finds by a preponderance of the evidence that a defendant falls into one of seven categories listed in Tennessee Code Annotated section 40-35-115.  In this instance, the trial court found as one of the factors that Defendant was "a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(a)(4).  If the trial court rests its determination of consecutive sentencing on this category, the court must make two additional findings.  *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).  First, the trial court must find that an extended sentence is necessary to protect the public from further criminal conduct by Defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses.  *Wilkerson*, 905 S.W.2d at 939.

The trial court, however, also considered Defendant to be an offender whose record of criminal activity is extensive to support the imposition of consecutive sentencing.  *See* Tenn. Code Ann. § 40-35-115(b)(2).  It is necessary to find the presence of only one of the statutory categories listed in Tennessee Code Annotated section 40-35-115(b) to support the imposition of consecutive sentences.  *See State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997).  We see no error in the application of this statutory factor.  Accordingly, we conclude that consecutive sentencing was properly imposed.

**CONCLUSION**

Based on the foregoing, we affirm Defendant's convictions of sexual battery and especially aggravated kidnapping. We remand, however for resentencing to determine Defendant's range classification in accordance with the provisions of Tennessee Code Annotated section 40-35-106(b)(5).

_____
THOMAS T. WOODALL, JUDGE