# BILL REESE, JR., Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

## 457 S.W.2d 877.

Court of Criminal Appeals of Tennessee. June 22, 1970.

Certiorari Denied by Supreme Court Aug. 3, 1970.

98

Jack E. Vaughn, Johnson City, for plaintiff in error.

David M. Pack, Atty. Gen., Thomas E. Fox, Deputy Atty. Gen., Nashville, Lewis W. May, Dist. Atty. Gen., Mountain City, for defendant in error.

## OPINION

RUSSELL, Judge.

The plaintiff in error, Bill Reese, Jr., was indicted and tried for an assault with the intent to commit first degree murder. The charge grew out of an occurrence during

which, under the State's proof, Reese overtook a small automobile while driving his pick-up truck, attempted to crowd it off the highway as he passed it and slowed down, and then fired a pistol shot into the right front fender of the car as its driver whipped around his truck and passed it. George Crumley, driver of the Volkswagen automobile, identified Reese as the pick-up truck driver who fired the shot into the right front of his car. A second shot apparently hit the right rear of the auto, but Crumley could not say who fired it. An unidentified second man was said to have also been in the pick-up.

The jury found Reese guilty of an assault and battery, and left his punishment by fine to the Court. The Trial Court did not choose to invoke a fine, but set a jail sentence of eleven months and twenty-nine days.

This appeal in the nature of a writ of error questions the legal sufficiency of the convicting evidence, the correctness of the Trial Court's denial of a new trial on the ground of newly discovered evidence, and the legality of certain "show-up" identification evidence.

The motion for a new trial averred that defendant had new proof "as shown by the attached affidavits of one Ernest King, that the prosecuting witness testified falsely in this case. That this witness had been summoned to appear but was not found by the officers after a diligent search in order to make service of process in this cause."

This ground has no merit upon its face. At once it is said that newly discovered evidence exists, and that the witness was summoned for the trial but not served. We must assume from a silent record that the defendant announced ready for trial, and that no continuance or

other postponement was moved for. Any right to claim prejudice was clearly waived.

■ We have also examined the affidavit, and do not find that its content would call for a new trial. There is no showing of due diligence. Taylor v. State, 180 Tenn. 62, 171 S.W.2d 403. See also Crittendon v. State, 157 Tenn. 403, 8 S.W.2d 371; Marable v. State, 203 Tenn. 440, 313 S.W.2d 451.

The identification evidence relied upon for reversal had its origin in the identification of Reese by Crumley at the sheriff's office the morning of the shooting. Crumley had driven on to Johnson City after the shooting and there called the police. Apparently, up in the morning he went to the sheriff's office, and gave the sheriff a description of a 25 year old male, crew cut, dark complexioned with a heavy dark beard and driving a red pick-up truck. Crumley testified that after he'd been there about ten minutes "they says, 'Well, I don't know of anybody unless it's Bill Reese.' I said, 'Well, bring him in, and if it's him, I'll say so, and if it's not him, I'll say so.'" Crumley apparently did not previously know Reese.

Deputy Sheriff Humphreys testified that he was the officer to whom the report and detailed description were given. The record shows Humphreys testified:

"Q. From the description that he gave you, did you go get somebody?

"A. Yes, sir. I made a telephone call and had the boy come to the office, and he identified him.

"Q. In other words, did Mr. Crumley identify him when he walked in there?

"A. Yes, sir. As soon as he came through the back door at the Ashe Street Courthouse, he said he was the boy."

At this point, it was developed in a non-jury hearing, that no advice relative to constitutional rights was ever given the defendant. Thereupon, a motion was made to suppress "any testimony given here today either by Mr. Crumley or by this officer" because of the nature of the show-up, or line-up. The motion was overruled, on the premise that this occurred at an investigatory, rather than accusatory, stage of the proceeding.

Later, in the cross-examination of Deputy Sheriff Humphreys, the record reflects:

"Q. Tell the Court and jury this, Mr. Humphreys, what prompted you to call this particular boy?

"A. Information I had from Carter County deputies.

"Q. Did they give a name?

"A. Yes, sir, they did."

\* \* \* \* \* \*

"Q. Before Mr. Reese was charged, had you had any conversation with Mr. Reese at all?

"A. No more than over the telephone.

"Q. And what did you tell him in that conversation?

"A. As well as I recall, I told him that there was a gentleman in the office that would like for him to come down there to see if he could be identified.

"Q. And what else did you ask him or tell him?

"A. I think that's about all the conversation we had. He immediately came on to the office."

* * * * * *

"Q. Now, when Mr. Crumley came to you and told you who you should look for, did he identify a particular truck?

"A. He said that the Reese boy had a truck that fit the description. He didn't pick out no particular truck.

"Q. He told you that the Reese boy had one?

"A. Yes, sir. Through this information he said he'd received.

"Q. When did he tell you that? When he first come in or after you had talked to him some time?

"A. It was just shortly after he got to the office.

"Q. And so really it was his suggestion to call Mr. Reese rather than this information you had from Carter County, wasn't it?

"A. It was Carter County officers that I talked to and got the information from."

The witness subsequently, without further objection, reiterated that Crumley had identified Reese on that occasion as the man who did the shooting. And the following witness, Police Lieutenant Aver of the Johnson City Police Department testified without objection that Crumley identified Reese on this occasion.

The defendant himself testified on direct as follows:

"Q. Now, when you came to the Sheriff's Department,

you come there, I believe, at the request of Mr. Humphreys?

"A. Yes, I did.

"Q. Did he tell you what for?

"A. No, he did not. He called me shortly after 9 A.M. on Sunday morning. He called my mother first. She called me and wanted to know if I was there. She didn't know where I had spent the night. And said he was to call back, and I told him to call me there. He called me back at the residence of Mrs. Freeman. I had just gotten out of bed at the first phone call. He called me back and asked me, said, 'What were you doing last night?' I said, 'We was running the wrecker.' He said, 'Are you busy?' I said, 'No.' I said, 'I'd like to go clean up.' He said 'How about coming over here. I want to talk to you.' And I said, 'Where are you? Jonesboro or Johnson City?' He said, "I'm in the office in the basement at Johnson City.' "

"Q. All right, now, what did Crumley say when he walked in the doorway?

"A. He said, 'That's him.' "

■■ Obviously, any objection which Reese might have had to evidence growing out of the show-up identification was waived; not only by non-objection to a good part of the State's proof, but completely by voluntarily testifying to the same thing on direct examination. The two-fold question of the admissibility of the evidence of the show-up identification, and the admissibility of the in-court identification at the trial, is not properly before us.

██ The legal sufficiency of the convicting evidence is questioned. We find that the evidence does not preponderate against the State's factual theory. We do note, however, a question not argued but implicit in this assignment. The conviction is for assault and battery with a gun. The evidence is that the gun was fired into Crumley's car. Crumley was not hit, and suffered absolutely no physical disturbance. We do not believe that a legal battery was committed.

In 6 C.J.S. Assault and Battery § 70, we find:

"It is essential to the offense of battery or assault and battery that there be a touching of the person of the prosecutor, or of something so intimately associated with, or attached to, his person as to be regarded as a part thereof.

"This touching, however, need not be in the form of a blow but may consist of any sort of contact; it may include every touching or laying hold, however slight, of another of his clothes in an angry, revengeful, rude, insolent, or hostile manner; or the direct or indirect application of force either by the aggressor himself, or by some substance or agency placed in motion by him. Hence it may consist in the beating, striking, or whipping of a person, striking him with a thrown missile, or pouring or throwing vitriol or other corrosive chemical upon him. It may also take the form of merely pushing or shoving him, or detaining him, or snatching or wrestling something from his possession. It may be a battery to strike a person with an automobile, or a horse and buggy, or to drive a horse against him. The contact may have been with the clothes of the

prosecutor or with something carried by him. It has even been held that a battery may be committed by striking or seizing a horse which complainant is riding or driving, although there is authority of equal weight to the contrary."

The above authority is cited with approval by our Supreme Court in Huffman v. State, 200 Tenn. 487, 292 S.W.2d 738, wherein it was held that an assault and battery was committed by ramming one automobile into another, causing injuries to the occupants. We have no element of personal injury in the case sub judice.

We find battery defined in 6 Am.Jur.2d p. 10, Assault and Battery, § 5, as follows:

"A battery is the unlawful touching or striking of the person of another by the aggressor himself or by any other substance put in motion by him, done with the intention of bringing about a harmful or offensive contact or apprehension thereof which is not legally consented to by the other and not otherwise privileged. It has been defined by some statutes as the unlawful use of force or violence on the person of another, or any unlawful beating or other wrongful physical violence or constraint inflicted on a person without his consent. The infliction of violence on a person, or a touching of his person in an angry, rude, insolent, or revengeful manner, constitutes battery."

Assault and Battery are defined in Underhill's Criminal Evidence, Fourth Edition, p. 1164, § 594, thusly:

"An assault has been defined as 'an attempt or offer, with force or violence, to do a corporal hurt to an-

other, whether wantonly or with a malicious intention, with such circumstances as denote an intention to do it at the time, coupled with the present ability to carry that intention into execution. An assault is involved in the commission of an abortion, a rape, a robbery and all crimes against the person, but usually the word 'assault' is employed in connection with the word 'battery.' The battery is merely the successful termination of the assault. The assault is the beginning of a crime, the motive of which is the inflication of some corporal hurt upon another without that person's consent, as, for example, an assault with intent to commit rape. As soon as the person assaulted is touched, no matter how trifling the hurt or touch may be, the battery has been committed."

Certainly the indictment in this case included the misdemeanors of assault and battery and simple assault. Fuerst v. State, 115 Tenn. 357, 89 S.W. 955; Strader v. State, 210 Tenn. 669, 362 S.W.2d 224, and many other cases collected as annotations under T.C.A. § 39-604. We note, however, that the charge in the case sub judice nowhere mentions simple assault as an included offense; but it clearly defines an assault.

■ We are of the opinion that this proof will not support the finding of a battery. The jury has acquitted of all felonies charged and included, finding Reese not guilty of an assault with the intent to commit any grade of homicide. Therefore, as we view the proof, this leaves only the question of possible guilt of simple assault; i. e., an assault with the intent to do less than kill; or, to put it another way, an assault with the intent to commit an

assault and battery. This is what a simple assault amounts to. See Huffman v. State, supra.

We would note that this proof would sustain a felony conviction under T.C.A. § 39-613, which proscribes, inter alia, wantonly or maliciously shooting at or into an occupied vehicle.

■ ■ We further note that his conviction for assault and battery implicitly includes a finding of guilt of simple assault. The evidence supports the proposition that an assault was in fact committed upon the prosecutor. Since all punishment was set by the trial judge, presumably to fit the facts of the case, we do not believe it necessary to remand the case for the fixing of punishment for simple assault. We treat the battery verdict and judgment as being mere surplusage and affirm the conviction of simple assault.

MITCHELL and GALBREATH, JJ., concur.